**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

AKIVA FRUCHTER, on Behalf of Himself
and All Others Similarly Situated,

                    Plaintiff,

           v.

TIME WARNER, INC., JEFFREY L.
BEWKES, JAMES L. BARKSDALE,
WILLIAM P. BARR, ROBERT C. CLARK,
MATHIAS DÖPFNER, JESSICA P.
EINHORN, CARLOS M. GUTIERREZ,
FRED HASSAN, PAUL D. WACHTER, and
DEBORAH C. WRIGHT,

                    Defendants.

Case No.

CLASS ACTION COMPLAINT
FOR VIOLATION OF FEDERAL
SECURITIES LAWS

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff Akiva Fruchter ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.    Plaintiff brings this class action on behalf of the public stockholders of Time Warner, Inc. ("Time Warner" or the "Company") against Time Warner and the members of Time Warner's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rules 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 229.1015(b)(4), arising out of their attempt to sell the Company to AT&T Inc. ("AT&T").

2.    On October 22, 2016, AT&T and the Company announced they had entered into

an Agreement and Plan of Merger dated October 22, 2016 ("Merger Agreement"). Under the terms of the Merger Agreement, AT&T, through its wholly owned subsidiary, West Merger Sub, Inc. ("Merger Sub"), will acquire all of the outstanding shares of Time Warner in a stock-and-cash transaction valued at $107.50 per share (the "Merger Consideration") (the "Proposed Transaction"). The Merger Consideration is comprised of $53.75 per share in cash and $53.75 per share in AT&T stock. The stock portion will be subject to a collar such that Time Warner stockholders will receive 1.437 AT&T shares if AT&T's average stock price is below $37.411 at closing and 1.3 AT&T shares if AT&T's average stock price is above $41.349 at closing. The Proposed Transaction has a total transaction value of approximately $108.7 billion and is expected to close before year-end 2017.

3.    The Proposed Transaction is the result of a flawed process designed to ensure the sale of Time Warner to AT&T on terms preferential to defendants and other Time Warner insiders, and will subvert the interests of Plaintiff and the other public stockholders of the Company. For example, Company insiders stand to benefit from the accelerated vesting of their significant equity holdings in the Company. Defendant Jeffrey Bewkes ("Bewkes"), Chairman and Chief Executive Officer ("CEO") of the Company, *alone* stands to receive *over $69 million* in golden parachute compensation if the merger is consummated.

4.    Furthermore, despite Time Warner's promising financial results in recent quarters, the Board negotiated exclusively with AT&T, failing to conduct any market check on the Company.

5.    On January 9, 2017, Time Warner filed a Definitive Proxy Statement on Schedule 14A (the "Proxy") with the SEC, which set the stockholder vote date on the Proposed Transaction for February 15, 2017. The Proxy, which recommends that Time Warner

stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Time Warner management's projections, utilized by the Company's financial advisors, Allen & Company LLC ("Allen & Company"), Citigroup Global Markets Inc. ("Citi"), and Morgan Stanley & Co. LLC ("Morgan Stanley") (collectively, the "Financial Advisors") in their financial analyses; (ii) the valuation analyses performed by the Financial Advisors in connection with the rendering of their fairness opinions; and (iii) the sale process leading up to the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

6.    In short, unless remedied, Time Warner's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the February 15, 2017 stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Time Warner maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

10.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Time Warner.

12.     Time Warner is a corporation organized and existing under the laws of the State of Delaware.  It maintains principal executive offices at One Time Warner Center, New York, NY 10019.

13.     Defendant Bewkes is Chairman and CEO of the Company.  Defendant Bewkes was elected Chairman of the Board in January 2009 and has been a director of the Company since January 2007.  Defendant Bewkes was elected CEO of the Company in January 2008. Defendant Bewkes served as President and Chief Operating Officer ("COO") of the Company from January 2006 to December 2007 and as Chairman of the Entertainment and Networks group from July 2002 to December 2005.

14.     Defendant James L. Barksdale ("Barksdale") has been a director of the Company since January 2001.

15.     Defendant William P. Barr ("Barr") has been a director of the Company since July 2009.

16.     Defendant Robert C. Clark ("Clark") serves as Lead Independent Director and has been a director of the Company since January 2004.

17.     Defendant Mathias Döpfner ("Döpfner") has been a director of the Company since July 2006.

18.     Defendant Jessica P. Einhorn ("Einhorn") has been a director of the Company since May 2005.

19.     Defendant Carlos M. Gutierrez ("Gutierrez") has been a director of the Company since October 2013.

20.     Defendant Fred Hassan ("Hassan") has been a director of the Company since October 2009.

21.     Defendant Paul D. Wachter ("Wachter") has been a director of the Company since October 2010.

22.     Defendant Deborah C. Wright ("Wright") has been a director of the Company since May 2005.

23.     Defendants Bewkes, Barksdale, Barr, Clark, Döpfner, Einhorn, Gutierrez, Hassan, Wachter and Wright are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

24.     AT&T is a Delaware corporation with its principal executive offices located at One AT&T Plaza, 208 South Akard Street, Dallas, TX 75202.  AT&T trades on the New York Stock Exchange under the ticker symbol "T."

25.    Merger Sub is a Delaware corporation and wholly owned subsidiary of AT&T.

## CLASS ACTION ALLEGATIONS

26.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Time Warner common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

27.    The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of January 3, 2017, there were 771,830,769 shares of common stock issued and outstanding. All members of the Class may be identified from records maintained by Time Warner or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

28.    Questions of law and fact are common to the Class, including, among others whether the defendants have violated Sections 14(a) and/or 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder by issuing the materially false and misleading Proxy to Time Warner stockholders.

29.    Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of defendants' wrongful conduct as alleged herein.

30.    Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

31.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

32.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**Company Background and its Strong Financial Outlook**

33.    Time Warner is a global leader in media and entertainment with a great portfolio of content creation and aggregation, and iconic brands across video programming and TV/film production.  Time Warner has three divisions: (i) Turner, which consists of U.S. and international basic cable networks, including TNT, TBS, CNN and Cartoon Network/Adult Swim, and has sports rights that include the National Basketball Association, NCAA Men's Championship Basketball Tournament, and Major League Baseball; (ii) HBO, which consists of domestic premium pay television and streaming services (HBO Now, HBO Go) featuring such original series as Game of Thrones, VEEP, and Silicon Valley, as well as international premium & basic pay television and streaming services; and (iii) Warner Brothers, which consists of television, feature film, home video and videogame production and distribution.  The Company also has film franchises and has invested in digital media properties.

34.    The Company has reported impressive financial results in recent quarters.    On May 4, 2016, the Company reported its first quarter 2016 financial results.    For the quarter, revenues increased 3% to $7.30 billion, compared to $7.12 billion in the first quarter of 2015. Adjusted operating income grew 11% to $2.01 billion compared to $1.81 billion in the first quarter of 2015.    Operating income increased 12% to $1.99 billion compared to $1.78 billion in the first quarter of 2015.    Defendant Bewkes commented on the quarter's positive financial results, stating:

> We're off to a terrific start to 2016, as we benefit from the investments we've been making in great content and new capabilities in order to take advantage of the growing demand for high-quality video content around the world. Revenues increased 3% and Adjusted Operating Income grew 11% to a quarterly record of $2 billion due to strong growth across all our operating divisions. In the past several weeks, we've seen Warner Bros. release its latest global hit in Batman v Superman: Dawn of Justice, setting the stage for what we expect to be a big year in film, with upcoming releases including Suicide Squad and Fantastic Beasts and Where to Find Them. In television, Warner Bros. continued to show its strength with three of the top five new shows on broadcast television this season among adults 18-49 and a record 21 renewals ahead of the upfront this year.

35.    On August 3, 2016, the Company reported its financial results for the second quarter of 2016.    The Company reported revenues of $6.95 billion compared to $7.35 billion in the second quarter of 2015.    Diluted income per share from continuing operations increased to $1.20 per share, compared to $1.16 per share in the second quarter of 2015.    For the first six months of 2016, total operating income reached $3.84 billion, an increase from $3.64 billion after the first six months of 2015.    Commenting on the favorable results, defendant Bewkes stated:

> We had a strong first half of 2016, which puts us ahead of our original goals for the year. Our performance reflects the creative excellence resulting from investments we've been making in the very best content. At the same time, we're capitalizing on new distribution opportunities to take advantage of the growing demand for high-quality video content around the world. As an example of our creative excellence, Time Warner received 148 Primetime Emmy nominations -

more than any other company - with HBO's 94 again setting the pace for the industry. In the second quarter, TNT and TBS finished as the two highest rated ad-supported cable networks in primetime among adults 18-49, and Warner Bros. once again came out of the upfront as the leading supplier to broadcast television. Warner Bros. also gained momentum in film with recent successes, such as Central Intelligence and The Conjuring 2, and anticipation is running high for Suicide Squad, which debuts this week.

Today, we also announced our 10% investment in Hulu LLC and that Turner has separately signed an affiliate agreement for its full suite of networks to be carried on Hulu's live-streaming service slated for launch early next year. These are just the latest examples of our commitment to supporting innovative digital services that allow consumers to access high-quality content however they want it across a variety of platforms. We're confident the multiple investments we're making in these types of services position the Company to benefit from growing global demand for the strongest network brands and very best video content.

36.     Most recently, on November 2, 2016, the Company issued a press release announcing its financial results for the third quarter of 2016.  The Company reported a 9% increase in revenue to $7.16 billion, compared to $6.56 billion in the third quarter of 2015. Operating income grew 10% to $2.01 billion, compared to $1.83 billion in the third quarter of 2015.  Defendant Bewkes again commented on the quarter's significantly improved results, stating:

We had a strong third quarter, which keeps us on track to exceed our original 2016 outlook and underscores our leadership in creating and distributing the very best content. In television, HBO took home more Primetime Emmy Awards than any other network for the 15th consecutive year and Time Warner's divisions won a total of 40 Emmys, more than any other company. CNN's standout election coverage made it the #1 news network in primetime among adults 18-49 for the fourth consecutive quarter and Turner's momentum doesn't stop there. Year-to-date, TBS, TNT and Adult Swim are three of the top five ad-supported cable networks in primetime among adults 18-49. In film, Warner Bros. had a strong quarter led by *Suicide Squad* and has the #1 release of the fall in *Sully*, while anticipation is off the charts for J.K. Rowling's *Fantastic Beasts and Where to Find Them*, which hits the big screen on November 18.

37.     Indeed, on the same day that it announced its third quarter 2016 financial results, the Company increased its full-year 2016 business outlook.  In a press release, the Company stated that it expects its 2016 full-year Adjusted EPS to be in the range of $5.73 to $5.83.

**The Flawed Sale Process**

38.     From inception, the Board performed a flawed single-bidder process to sell the Company to AT&T, acting to benefit their own interests above the interests of the Company's public stockholders and failing to conduct any market check. The Proxy does not adequately explain why the Board was so determined to sell the Company at a time when its prospects were so bright and after having negotiated solely with AT&T for a mere two months.

39.     In the summer of 2014, Twenty-First Century Fox made an unsolicited proposal to acquire Time Warner for a mix of $32.42 in cash and 1.531 shares of Twenty-First Century Fox Class A non-voting common stock. The Board ultimately determined not to proceed with the Twenty-First Century Fox proposal.

40.     On August 25, 2016, at a meeting between defendant Bewkes and Randall Stephenson ("Stephenson"), Chairman and CEO of AT&T, Stephenson expressed an interest in exploring a potential combination of Time Warner and AT&T, indicating an acquisition price of the Company in the range of $100 per share. Defendant Bewkes concluded that he would discuss such a transaction with the Board.

41.     On August 29, 2016, Time Warner and AT&T executed a confidentiality agreement.

42.     On September 2, 2016, Stephenson reiterated to defendant Bewkes that he continued to believe that AT&T could pay a price in the range of $100 per share to acquire Time Warner.

43.     Following a September 7, 2016 Board conference call, the Board authorized engagement with AT&T, and for the next few weeks, the companies engaged in mutual due diligence.

44.     On September 28, 2016, Stephenson proposed that AT&T acquire Time Warner for $103 per share, consisting of 45% cash and 55% AT&T common stock, subject to a 5% symmetrical collar on the stock component.  In response, defendant Bewkes indicated that the Board would require a purchase price well above Stephenson's proposal in order to pursue a potential combination with AT&T.  Stephenson then stated that AT&T could increase its proposal to $105 per share, subject to a 4% symmetrical collar on the stock component, but that there would be no basis for further discussion if the Company's price expectation was in the teens.

45.     On October 6, 2016, the Board met to consider AT&T's revised proposal and determined to authorize management to continue discussions with AT&T with a view to improving the price offered, changing the consideration mix to 50% cash and 50% AT&T common stock, improving the collar protection, and securing commitments regarding obtaining regulatory approval, as well as a payment to Time Warner in the event regulatory approvals could not be obtained notwithstanding AT&T's compliance with its commitments.

46.     On October 7, 2016, defendant Bewkes proposed a price of $110 per share consisting of 50% cash and 50% AT&T common stock, subject to a 5% symmetrical collar on the stock component.  AT&T noted that it would need to conduct additional due diligence in order to consider any further increase in an offer price.

47.     On October 11, 2016, representatives of Time Warner and AT&T management met in Dallas, Texas.  Following the meeting, defendant Bewkes and Stephenson agreed to continue to work towards a transaction based on a purchase price of $107.50 per share, consisting of 50% cash and 50% AT&T common stock, with a 5% symmetrical collar on the stock component of the consideration.

48.     Between October 13, 2016 and October 22, 2016, the parties and their advisors negotiated and finalized the terms of the Merger Agreement.  On October 22, 2016, the Board approved the Proposed Transaction, and Time Warner and AT&T executed the Merger Agreement.

**Insiders' Interest in the Proposed Transaction**

49.     AT&T and Time Warner insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Time Warner.

50.     While the Company's public stockholders are receiving inadequate consideration for their valuable Time Warner holdings, its named executive officers will achieve a substantial payday.  If they are terminated in connection with the Proposed Transaction, the Company's named executive officers will receive substantial cash payments in the form of golden parachute compensation.  According to the Proxy, defendant Bewkes *alone* stands to receive *over $69 million* in severance benefits, as detailed in the table below:

| | | | | |
|---|---|---|---|---|
| | | Golden Parachute Compensation (1) | | |
| Name (2) | Cash ($) (3) | Equity ($) (4) | Perquisites / Benefits ($) (5) | Total ($) (6) |
| Mr. Bewkes<br>Chairman of the Time Warner Board and Chief Executive Officer | 44,522,603 | 23,383,255 | 1,213,332 | 69,119,189 |
| Mr. Averill<br>Executive Vice President and Chief Financial Officer | 16,103,716 | 19,714,866 | 103,101 | 35,921,683 |
| Mr. Cappuccio<br>Executive Vice President and General Counsel | 17,337,459 | 10,351,372 | 108,901 | 27,797,732 |
| Mr. Ginsberg<br>Executive Vice President, Corporate Marketing & Communications | 9,582,243 | 4,725,046 | 102,259 | 14,409,549 |
| Mr. Olafsson<br>Executive Vice President, International & Corporate Strategy | 7,944,114 | 4,365,966 | 102,259 | 12,412,339 |

**The Materially Misleading and Incomplete Proxy**

51.    Defendants have failed to provide stockholders with material information necessary for an informed vote on the Proposed Transaction. The Proxy, which recommends that the Company's stockholders vote in favor of the Proposed Transaction on February 15, 2017, misrepresents and/or omits material information in violation of Sections 14(a) and 20(a) of the Exchange Act.

52.    The Proxy is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

*Material Omissions Concerning Time Warner's and AT&T's Financial Projections*

54.    With respect to Time Warner's management projections, although the Financial Advisors each used Time Warner management's projections for the fiscal year ending December 31, 2016 through the full fiscal year ending December 31, 2025, the Proxy fails to disclose any projections for fiscal years 2020-2025. Specifically, the Proxy fails to disclose, for the fiscal years ended December 31, 2020 through December 31, 2025, the following items: (a) Revenue, (b) Adjusted OIBDA, and (c) Unlevered Free Cash Flow.

55.    Moreover, the Proxy provides projections for non-GAAP metrics for Time Warner, including Adjusted OIBDA and Unlevered Free Cash Flow, but fails to provide line item projections for the metrics used to calculate Adjusted OIBDA and Unlevered Free Cash Flow or otherwise reconcile the non-GAAP Adjusted OIBDA and Unlevered Free Cash Flow projections to GAAP. *See* Proxy at 81. The omission of such projections renders the non-GAAP projections included in the Proxy materially incomplete and therefore misleading.

56.    Similarly, with respect to AT&T's management projections, although the Financial Advisors each used AT&T management's projections for the fiscal year ending December 31, 2016 through the full fiscal year ending December 31, 2021, the Proxy fails to

disclose any projections for fiscal years 2020-2021. Specifically, the Proxy fails to disclose, for the fiscal years ended December 31, 2020 through December 31, 2021, the following items: (a) Total Revenue, (b) Total EBITDA, and (c) Adjusted EPS. In addition, for fiscal years 2016-2021, the Proxy fails to disclose Unlevered Free Cash Flow, the definition of Unlevered Free Cash Flow and the line items used to calculate Unlevered Free Cash Flows.

57.    The Proxy also provides projections for non-GAAP metrics for AT&T including, Adjusted EBITDA and Adjusted EPS, but fails to provide line item projections for the metrics used to calculate Adjusted EBITDA and Adjusted EPS or otherwise reconcile the non-GAAP EBITDA projections to GAAP. *See* Proxy at 83. The omission of such projections renders the non-GAAP projections included in the Proxy materially incomplete and therefore misleading.

58.    The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)    From pages 81-83 of the Proxy:

Certain of the Time Warner management forecasts set forth below may be considered non-GAAP financial measures. Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with U.S. GAAP, and non-GAAP financial measures as used in the Time Warner management forecasts may not be comparable to similarly titled measures used by other companies.

Time Warner does not generally publish its business plans and strategies or make external disclosures of its anticipated financial position or results of operations. Accordingly, Time Warner does not intend to update or otherwise revise the Time Warner management forecasts to reflect circumstances existing since its preparation or to reflect the occurrence of unanticipated events, even in the event that any or all of the underlying assumptions are shown to be in error. Furthermore, Time Warner does not intend to update or revise the Time Warner management forecasts to reflect changes in general economic or industry conditions.

The Time Warner management forecasts are not included in this proxy statement/prospectus in order to induce any stockholder to vote in favor of the proposal to adopt the merger agreement or any of the other proposals to be voted

on at the special meeting or to influence any stockholder to make any investment decision with respect to the transaction or otherwise. For the reasons described above, readers of this proxy statement/prospectus are cautioned not to place undue, if any, reliance on the Time Warner management forecasts. Time Warner has not made any representation in the merger agreement concerning the Time Warner management forecasts.

The following table presents the Time Warner management forecasts referred to above:

| ($ in millions) | Fiscal Year Ending December 31, | | | |
| | 2016E | 2017E | 2018E | 2019E |
|---|---|---|---|---|
| Revenue | $ 29,356 | $ 31,103 | $ 32,844 | $ 34,529 |
| Adjusted OIBDA (1) | $ 8,231 | $ 8,922 | $ 9,559 | $ 10,465 |
| Unlevered Free Cash Flow (2) | $ 4,817 | $ 4,624 | $ 4,970 | $ 5,918 |

(1) Adjusted OIBDA represents operating income before depreciation and amortization, adjusted to exclude: the impact, if any, of noncash impairments of goodwill, intangible and fixed assets; gains and losses on operating assets (other than deferred gains on sale-leasebacks); gains and losses recognized in connection with pension and other postretirement benefit plan curtailments and settlements; external costs related to mergers, acquisitions or dispositions (including restructuring and severance costs associated with dispositions), as well as contingent consideration related to such transactions, to the extent such costs are expensed; and amounts related to securities litigation and government investigations.

(2) Unlevered Free Cash Flow is calculated as Adjusted OIBDA less unlevered cash taxes, capital expenditures, changes in net working capital and other cash items.

\* \* \*

Certain of the AT&T forecasts set forth below may be considered non-GAAP financial measures. Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with U.S. GAAP, and non-GAAP financial measures as used in the AT&T forecasts may not be comparable to similarly titled measures used by other companies.

AT&T does not intend to update or otherwise revise the AT&T forecasts to reflect circumstances existing since its preparation or to reflect the occurrence of unanticipated events or changes in general economic or industry conditions even in the event that any or all of the underlying assumptions may have changed.

The AT&T forecasts are not included in this proxy statement/prospectus in order to induce any stockholder to vote in favor of the proposal to adopt the merger agreement or any of the other proposals to be voted on at the special meeting or to influence any stockholder to make any investment decision with respect to the transaction or otherwise. For the reasons described above, readers of this proxy statement/prospectus are cautioned not to place undue, if any, reliance on the

AT&T forecasts. AT&T has not made any representation in the merger agreement concerning the AT&T forecasts.

| ($ in millions, except per share data) | Fiscal Year Ending December 31, | | |
|---|---|---|---|
| | 2017E | 2018E | 2019E |
| Total Revenue | $ 166,852 | $ 170,252 | $ 173,995 |
| Total EBITDA (1) | $ 55,522 | $ 57,962 | $ 59,849 |
| Adjusted EPS (2) | $ 3.00 | $ 3.15 | $ 3.34 |

(1)   EBITDA is defined for purposes of the AT&T forecasts as operating income before depreciation and amortization.

(2)   Adjusted EPS is calculated for purposes of the AT&T forecasts by excluding from operating revenues, operating expenses and income tax expense certain significant items that are non-operational or non-recurring in nature, including dispositions and merger integration and transaction costs.

### *Material Omissions Concerning the Financial Advisor's Financial Analyses*

59.     The Proxy describes the Financial Advisors' fairness opinions and the various valuation analyses they performed in support of their opinions. However, the description of the Financial Advisors' fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Time Warner's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the Financial Advisors' fairness opinions in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Time Warner's stockholders.

60.     For example, the Financial Advisors each performed *Discounted Cash Flow* ("*DCF*") *Analyses* of Time Warner that were presented to the Board, yet the Proxy fails to disclose (a) with respect to Allen & Company's DCF analysis of Time Warner, (i) the implied terminal pricing multiples corresponding to the assumed perpetuity growth rates of 1.75% to 2.25%, and (ii) the individual inputs and assumptions utilized by Allen & Company to derive the discount rate range for Time Warner of 7.0% to 8.0%; (b) with respect to Citi's DCF analysis of Time Warner, (i) the implied terminal pricing multiples corresponding to the assumed perpetuity growth rates of 1.25% to 1.75%, and (ii) the individual inputs and assumptions utilized by Citi to

derive the discount rate range for Time Warner of 6.5% to 7.7%; and (c) with respect to Morgan Stanley's DCF analysis of Time Warner, (i) the next 12 months (as of December 31, 2025) estimated adjusted OIBDA Morgan Stanley used in its analysis; (ii) the individual inputs and assumptions utilized by Morgan Stanley to derive the next 12 months OIBDA multiples of 8.0x to 9.5x, and (iii) the individual inputs and assumptions utilized by Morgan Stanley to derive the discount rate range for Time Warner of 6.0% to 7.5%;

61.    Similarly, the Financial Advisors each performed *DCF Analyses* of AT&T that were presented to the Board, yet the Proxy fails to disclose (a) with respect to Allen & Company's DCF analysis of AT&T, (i) the implied terminal pricing multiples corresponding to the assumed perpetuity growth rates of 0.5% to 1.0%, and (ii) the individual inputs and assumptions utilized by Allen & Company to derive the discount rate range for AT&T of 5.5% to 6.5%; (b) with respect to Citi's DCF analysis of AT&T, (i) the implied terminal pricing multiples corresponding to the assumed perpetuity growth rates of 0% to 0.5%, and (ii) the individual inputs and assumptions utilized by Citi to derive the discount rate range for AT&T of 4.9% to 5.6%; and (c) with respect to Morgan Stanley's DCF analysis of AT&T, (i) the next 12 months (as of December 31, 2021) estimated OIBDA Morgan Stanley used in its analysis; (ii) the individual inputs and assumptions utilized by Morgan Stanley to derive the next 12 months OIBDA multiples of 6.5x to 7.5x, and (iii) the individual inputs and assumptions utilized by Morgan Stanley to derive the discount rate range for AT&T of 5.0% to 6.25%;

62.    In addition, the Financial Advisors performed a *Selected Public Companies Analysis* of Time Warner and AT&T that were presented to the Board, yet the Proxy fails to disclose the individual multiples for each of the selected comparable companies analyzed by the Financial Advisors or, at the very least, the mean and median multiples observed by the

Financial Advisors and the Board, as well as any benchmarking analyses the Financial Advisors

performed for Time Warner and AT&T in relation to the selected public companies.

63.     Further, with respect to the Financial Advisors' *Selected Precedent Transactions*

*Analysis* for Time Warner that was presented to the Board, the Proxy fails to disclose the

individual multiples for each of the selected transactions analyzed by the Financial Advisors or,

at the very least, the mean and median multiples observed by the Financial Advisors and the

Board, as well as any benchmarking analyses the Financial Advisors performed.

64.     The omission of this information renders the following statements in the Proxy

false and/or materially misleading in contravention of the Exchange Act:

(a)     From page 77 of the Proxy:

*Discounted Cash Flow Analyses* . The Time Warner financial advisors performed
separate discounted cash flow analyses of Time Warner by calculating the
estimated present value (as of September 30, 2016) of the unlevered, after-tax free
cash flows that Time Warner was forecasted to generate during the last three
months of the fiscal year ending December 31, 2016 through the full fiscal year
ending December 31, 2025 based on the Time Warner management forecasts. For
purposes of these analyses, stock-based compensation was treated as a cash
expense.

Allen & Company calculated implied terminal values for Time Warner by
applying to Time Warner's unlevered, after-tax free cash flows for the fiscal year
ending December 31, 2025 (normalized by the management of Time Warner in
the terminal year for depreciation, amortization, capital expenditures and tax rate)
a selected range of perpetuity growth rates of 1.75% to 2.25%. The present values
(as of September 30, 2016) of the cash flows and terminal values were then
calculated using a selected range of discount rates of 7.0% to 8.0%. This analysis
indicated an approximate implied per share equity value reference range for Time
Warner of $98 to $130, as compared to the merger consideration of $107.50.

Citi calculated implied terminal values for Time Warner by applying to Time
Warner's unlevered, after-tax free cash flows for the fiscal year ending December
31, 2025 (normalized by the management of Time Warner in the terminal year for
depreciation, amortization, capital expenditures and tax rate) a selected range of
perpetuity growth rates of 1.25% to 1.75%. The present values (as of September
30, 2016) of the cash flows and terminal values were then calculated using a
selected range of discount rates of 6.5% to 7.7%. This analysis indicated an

approximate implied per share equity value reference range for Time Warner of $98 to $135, as compared to the merger consideration of $107.50.

Morgan Stanley calculated implied terminal values for Time Warner by applying to Time Warner's next 12 months (as of December 31, 2025) estimated adjusted OIBDA (extrapolated based on the Time Warner management forecasts) a selected range of next 12 months OIBDA multiples of 8.0x to 9.5x. The present values (as of September 30, 2016) of the cash flows and terminal values were then calculated using a selected range of discount rates of 6.0% to 7.5%. This analysis indicated an approximate implied per share equity value reference range for Time Warner of $101 to $130, as compared to the merger consideration of $107.50.

(b)    From pages 78-79 of the Proxy:

*Discounted Cash Flow Analyses* . The Time Warner financial advisors performed separate discounted cash flow analyses of AT&T by calculating the estimated present value (as of September 30, 2016) of the unlevered, after-tax free cash flows that AT&T was forecasted to generate during the last three months of the fiscal year ending December 31, 2016 through the full fiscal year ending December 31, 2021 based on the AT&T management forecasts. For purposes of these analyses, stock-based compensation was treated as a cash expense.

Allen & Company calculated implied terminal values for AT&T by applying to AT&T's unlevered, after-tax free cash flows for the fiscal year ending December 31, 2021 (normalized per the management of Time Warner in the terminal year for depreciation, amortization, capital expenditures, pension funding and tax rates and after taking into account network capital expenditures) a selected range of perpetuity growth rates of 0.5% to 1.0%. The present values (as of September 30, 2016) of the cash flows and terminal values were then calculated using a selected range of discount rates of 5.5% to 6.5%. This analysis indicated an approximate implied per share equity value reference range for AT&T of $37 to $56, as compared to the unaffected closing price of AT&T common stock on October 19, 2016 of $39.38 per share.

Citi calculated implied terminal values for AT&T by applying to AT&T's unlevered, after-tax free cash flows for the fiscal year ending December 31, 2021 (normalized per the management of Time Warner in the terminal year for depreciation, amortization, capital expenditures, pension funding and tax rates and after taking into account network capital expenditures) a selected range of perpetuity growth rates of 0% to 0.5%. The present values (as of September 30, 2016) of the cash flows and terminal values were then calculated using a selected range of discount rates of 4.9% to 5.6%. This analysis indicated an approximate implied per share equity value reference range for AT&T of $43 to $59, as compared to the unaffected closing price of AT&T common stock on October 19, 2016 of $39.38 per share.

Morgan Stanley calculated implied terminal values for AT&T by applying to AT&T's next 12 months (as of December 31, 2021) estimated OIBDA (extrapolated based on the AT&T management forecasts and adding back pension and other post-employment benefit expense other than service costs) a selected range of next 12 months OIBDA multiples of 6.5x to 7.5x. The present values (as of September 30, 2016) of the cash flows and terminal values were then calculated using a selected range of discount rates of 5.00% to 6.25%. This analysis indicated an approximate implied per share equity value reference range for AT&T of $41 to $53, as compared to the unaffected closing price of AT&T common stock on October 19, 2016 of $39.38 per share.

(c)    From pages 75-76 of the Proxy:

*Selected Public Companies Analysis* . The Time Warner financial advisors reviewed publicly available financial and stock market information of Time Warner and eight selected companies that the Time Warner financial advisors considered generally relevant as publicly traded companies with operations in the media and entertainment industry, consisting of the following four publicly traded diversified entertainment companies, which we refer to as the Time Warner selected diversified entertainment companies, and the following four publicly traded cable network/studio companies, which we refer to as the Time Warner selected cable network/studio companies and, together with the Time Warner selected diversified entertainment companies, collectively, the Time Warner selected companies:

| Time Warner Selected Diversified Entertainment Companies | Time Warner Selected Cable Network/Studio Companies |
| --- | --- |
| • CBS Corporation | • AMC Networks Inc. |
| • The Walt Disney Company | • Discovery Communications, Inc. |
| • Twenty-First Century Fox, Inc. | • Lions Gate Entertainment Corp. |
| • Viacom Inc. | • Scripps Networks Interactive, Inc. |

The Time Warner financial advisors reviewed, among other information, enterprise values, calculated as fully diluted equity values based on closing stock prices on October 19, 2016 (the last trading day prior to published reports regarding a potential acquisition of Time Warner by AT&T), plus total debt, preferred equity and non-controlling interests (as applicable) and less cash and cash equivalents and unconsolidated assets (as applicable), as a multiple of next 12 months (as of September 30, 2016) estimated operating income before depreciation and amortization, which we refer to as OIBDA. The Time Warner financial advisors also reviewed closing stock prices on October 19, 2016, as a multiple, to the extent publicly available, of next 12 months (as of September 30, 2016) estimated earnings per share, which we refer to as EPS. Financial data of the Time Warner selected companies were based on public filings, publicly available Wall Street research analysts' estimates and other publicly available information (pro forma, as applicable, for certain recent investments and acquisitions, dividends paid and/or debt raised). Financial data of Time Warner was based on the Time Warner management forecasts.

The overall low to high next 12 months (as of September 30, 2016) estimated OIBDA multiples observed for the Time Warner selected companies were 7.2x to 9.7x, with overall low to high next 12 months (as of September 30, 2016) estimated OIBDA multiples observed for the Time Warner selected diversified entertainment companies of 7.6x to 9.5x and overall low to high next 12 months (as of September 30, 2016) estimated OIBDA multiples observed for the Time Warner selected cable network/studio companies of 7.2x to 9.7x. The overall low to high next 12 months (as of September 30, 2016) estimated EPS multiples observed for the Time Warner selected companies were 8.3x to 15.2x, with overall low to high next 12 months (as of September 30, 2016) estimated EPS multiples observed for the Time Warner selected diversified entertainment companies of 8.8x to 15.2x and overall low to high next 12 months (as of September 30, 2016) estimated EPS multiples observed for the Time Warner selected cable network/studio companies of 8.3x to 11.7x.

The Time Warner financial advisors then applied selected ranges of next 12 months (as of September 30, 2016) estimated OIBDA and EPS multiples of 8.5x to 9.5x and 12.0x to 15.0x, respectively, derived from the Time Warner selected companies to the next 12 months (as of September 30, 2016) estimated adjusted OIBDA and adjusted EPS of Time Warner. This analysis indicated the following approximate implied per share equity value reference ranges for Time Warner, as compared to the merger consideration:

| Implied Per Share Equity Value Reference Ranges Based On: | | Merger Consideration |
|---|---|---|
| Next 12 Months Adjusted OIBDA | Next 12 Months Adjusted EPS | |
| $69 - $80 | $69 - $86 | $107.50 |

    (d)    From pages 77 to 78 of the Proxy:

*Selected Public Companies Analysis* . The Time Warner financial advisors reviewed publicly available financial and stock market information of AT&T and seven selected companies that the Time Warner financial advisors considered generally relevant as publicly traded companies with operations in the telecommunications industry, consisting of the following four publicly traded telecommunications companies, which we refer to as the AT&T selected telecommunications companies, and the following three publicly traded cable/satellite companies, which we refer to as the AT&T selected cable/satellite companies and, together with the AT&T selected telecommunications companies, collectively, the AT&T selected companies:

| AT&T Selected Telecommunications Companies | AT&T Selected Cable/Satellite Companies |
|---|---|
| • CenturyLink, Inc. | • Charter Communications, Inc. |
| • Sprint Corporation | • Comcast Corporation |
| • T-Mobile US, Inc. | • DISH Network Corporation |
| • Verizon Communications Inc. | |

The Time Warner financial advisors reviewed, among other information, enterprise values, calculated as fully diluted equity values based on closing stock prices on October 19, 2016, plus total debt, preferred equity, non-controlling interests, after-tax unfunded pension and other post-employment benefit liabilities and expected near-term network asset expenditures (as applicable) and less cash and cash equivalents, unconsolidated assets and non-operating network assets (as applicable), as a multiple of next 12 months (as of September 30, 2016) estimated OIBDA (adding back pension and other post-employment benefit expense other than service costs). The Time Warner financial advisors also reviewed closing stock prices on October 19, 2016, as a multiple, to the extent meaningful, of next 12 months (as of September 30, 2016) estimated EPS. Financial data of the AT&T selected companies were based on public filings, publicly available Wall Street research analysts' estimates and other publicly available information (pro forma, as applicable, for certain recent acquisitions, dividends paid and/or debt raised). Financial data of AT&T was based on publicly available Wall Street research analysts' estimates and the AT&T management forecasts.

The overall low to high next 12 months (as of September 30, 2016) estimated OIBDA multiples observed for the AT&T selected companies were 5.2x to 9.4x, with overall low to high next 12 months (as of September 30, 2016) estimated OIBDA multiples observed for the AT&T selected telecommunications companies of 6.2x to 8.9x and overall low to high next 12 months (as of September 30, 2016) estimated OIBDA multiples observed for the AT&T selected cable/satellite companies of 5.2x to 9.4x. The overall low to high next 12 months (as of September 30, 2016) estimated EPS multiples observed for the AT&T selected companies were 11.7x to 27.0x, with overall low to high next 12 months (as of September 30, 2016) estimated EPS multiples observed for the AT&T selected telecommunications companies of 11.7x to 27.0x and, given the absence of meaningful data for Charter Communications, Inc. and DISH Network Corporation, a next 12 months (as of September 30, 2016) estimated EPS multiple observed for Comcast Corporation of 17.3x. The Time Warner financial advisors noted that the next 12 months (as of September 30, 2016) estimated OIBDA and EPS multiples observed for AT&T were 7.5x and 13.2x, respectively, based on publicly available Wall Street research analysts' estimates.

The Time Warner financial advisors then applied selected ranges of next 12 months (as of September 30, 2016) estimated OIBDA and EPS multiples of 7.0x to 8.0x and 12.0x to 14.0x, respectively, derived from the AT&T selected companies to the next 12 months (as of September 30, 2016) estimated OIBDA (adding back pension and other post-employment benefit expense other than service costs) and adjusted EPS of AT&T based on the AT&T management forecasts. This analysis indicated the following approximate implied per share equity value reference ranges for AT&T, as compared to the unaffected closing price of AT&T common stock on October 19, 2016 of $39.38 per share:

| Implied Per Share Equity Value Reference Ranges Based On: | | | AT&T Unaffected Closing Stock Price |
| Next 12 Months Pension-Adjusted OIBDA | Next 12 Months Adjusted EPS | | |
| $35 - $44 | $36 - $42 | $ | 39.38 |

(e)     From page 76 of the Proxy:

*Selected Precedent Transactions Analysis.* Using publicly available information, the Time Warner financial advisors reviewed financial data relating to the following nine selected transactions that the Time Warner financial advisors considered generally relevant as transactions announced since October 22, 2006 with transaction values in excess of $950 million involving U.S. target companies with operations in the media and entertainment industry, which we refer to collectively as the selected transactions:

| Announcement Date | Acquiror | Target |
|---|---|---|
| June 2016 | Lions Gate Entertainment Corp. | Starz |
| April 2016 | Comcast Corporation | Dreamworks Animation SKG, Inc. |
| November 2012 | News Corporation | Yankees Entertainment and Sports Network |
| October 2012 | The Walt Disney Company | Lucasfilm Ltd. |
| December 2009 | Comcast Corporation/General Electric Company (joint venture) | NBC Universal, Inc. |
| November 2009 | Scripps Networks Interactive, Inc. | Travel Channel |
| August 2009 | The Walt Disney Company | Marvel Entertainment, Inc. |
| July 2008 | NBC Universal, Inc./Bain Capital, LLC/The Blackstone Group L.P. | The Weather Channel |
| March 2007 | Cox Communications, Inc. | Travel Channel |

The Time Warner financial advisors reviewed, among other information, transaction values of the selected transactions, calculated as the enterprise values implied for the target companies based on the consideration paid in the relevant transactions or purchase prices paid for the fully diluted equity values of the target companies based on closing stock prices as of the dates prior to the announcement dates of the relevant transactions, plus total debt, preferred equity and non-controlling interests (as applicable) and less cash and cash equivalents and unconsolidated assets (as applicable), as a multiple, to the extent publicly available, of the applicable target company's or business' latest 12 months estimated earnings before interest, taxes, depreciation and amortization, which we refer to as EBITDA (a metric functionally equivalent to OIBDA), or, in the case of the Lucasfilm Ltd. transaction, earnings before interest and taxes, which we refer to as EBIT, as of the applicable announcement date. Financial data of the selected transactions were based on public filings, publicly available Wall Street research analysts' estimates and other publicly available information. Financial data of Time Warner was based on the Time Warner management forecasts.

The overall low to high latest 12 months estimated EBITDA (or, estimated EBIT, as the case may be) multiples observed for the selected transactions were 10.9x to 32.3x (with a median of 12.6x). The Time Warner financial advisors then applied

a selected range of latest 12 months estimated EBITDA multiples of 11.0x to 14.0x derived from the selected transactions to the latest 12 months (as of September 30, 2016) estimated adjusted OIBDA of Time Warner. This analysis indicated the following approximate implied per share equity value reference range for Time Warner, as compared to the merger consideration:

| Implied Per Share Equity Value Reference Range | Merger Consideration |
|---|---|
| $87 -$117 | $107.50 |

### Material Omissions Concerning the Background of the Proposed Transaction

65.     The Proxy also fails to disclose material information relating to the background of the Proposed Transaction, including:

(a)     The timing and nature of all communications regarding future employment and directorship of Time Warner's officers and directors, including who participated in all such communications; and

(b)     The reasons the Board provided for determining not to contact other potential acquirers at the October 6 and October 22, 2016 meetings, including the Board's reasons for not continuing as a standalone entity.

66.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)     From pages 59-60 of the Proxy:

On October 6, 2016, the Time Warner board held an in-person meeting at Cravath's offices in New York, with representatives of Time Warner's management, Allen & Company and Cravath participating, to consider AT&T's revised proposal. At the meeting, representatives of Cravath reviewed with the Time Warner board the directors' fiduciary duties and other legal matters, including the regulatory approval process for a transaction with AT&T. Representatives of Time Warner's management discussed with the Time Warner board Time Warner's 2016 year-to-date operating and financial performance and the long-range plan approved by the Time Warner board in January 2016. Allen & Company discussed with the Time Warner board preliminary financial perspectives regarding Time Warner, AT&T and AT&T's revised proposal, including certain considerations regarding AT&T common stock. The Time Warner board discussed, among other things, other potential acquirors of Time Warner, the likelihood that any of them would provide a transaction

superior to that being proposed by AT&T and how best to determine whether such a superior transaction could be obtained, as well as the latitude the Time Warner board would have under a merger agreement with AT&T to consider competing proposals following execution of an agreement with AT&T.

* * *

On October 22, 2016, the Time Warner board held an in-person meeting at Cravath's offices in New York, with representatives of Time Warner's management, Allen & Company, Citi, Morgan Stanley and Cravath participating. Representatives of Cravath reviewed the directors' fiduciary duties and other legal matters in connection with the Time Warner board's consideration of the transaction, including the proposed terms of the merger agreement that had been negotiated between the parties. The Time Warner board also discussed, with input from Time Warner's financial advisors, other potential acquirors of Time Warner and the likelihood that any of them could consummate a transaction superior to the transaction with AT&T. After discussion, Allen & Company, Citi and Morgan Stanley reviewed and discussed with the Time Warner board their financial analyses of the merger consideration and each separately rendered an oral opinion, confirmed by delivery of a written opinion dated October 22, 2016, to the Time Warner board to the effect that, as of such date and based on and subject to the various assumptions made, procedures followed, matters considered and qualifications and limitations on the review undertaken as set forth in such opinion, the merger consideration provided for pursuant to the merger agreement was fair, from a financial point of view, to holders of Time Warner common stock.

67.    Defendants' failure to provide Time Warner stockholders with the foregoing material information renders the statements in the "Background of the Transaction" section of the Proxy false and/or materially misleading and constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9 promulgated thereunder.  The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

58.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

59.    During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

60.    By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy.  The Proxy was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the sales process for the Company, the financial analyses performed by the Company's Financial Advisors, and the actual intrinsic standalone value of the Company.  The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

61.    The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

62.    By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

63.    Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

63.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

64.     The Individual Defendants acted as controlling persons of Time Warner within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Time Warner and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

65.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

67.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed

Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

68. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

69. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Time Warner's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands relief, in his favor and in favor of the Class and against defendants, as follows:

(A) Declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

(B) Declaring that the Proxy is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(C) Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy;

(D)    To the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff and the members of the Class rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

(E)    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

(F)    Granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Date: January 24, 2017                          **WeissLaw LLP**

By: _____
        Richard A. Acocelli

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile:  (212) 682-3010